33 N.J. Super. 477 (1955)
111 A.2d 78
S. GRILL D'IPPOLITO, PLAINTIFF-APPELLANT,
v.
PETER T. MAGUIRE, ACTING DIRECTOR OF PUBLIC SAFETY OF THE CITY OF VINELAND; JOHN C. GITTONE, MAYOR OF THE CITY OF VINELAND; AND CITY COUNCIL OF THE CITY OF VINELAND, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1954.
Decided January 6, 1955.
*479 Before Judges GOLDMANN, FREUND and SCHETTINO.
Mr. Carl Kisselman argued the cause for plaintiff-appellant.
Mr. Lawrence N. Park argued the cause for defendants-respondents (Mr. Philip L. Lipman, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a final judgment of the Law Division (1) denying his motion for summary judgment and (2) granting defendants' motion for summary judgment and dismissing the complaint with prejudice. Involved here is the right of a municipality to suspend a police officer without pay, pending investigation, the preferring of formal charges and a hearing.
In 1946 the Borough of Vineland adopted the provisions of the Civil Service Act, R.S. 11:19-1 et seq., as amended. The City of Vineland was organized under the Optional Municipal Charter Law, L. 1950, c. 210 (N.J.S.A. 40:69A-1 et seq.), on July 1, 1952, as successor, by consolidation, to the Borough of Vineland and the Township of Landis, both in Cumberland County. The Civil Service Act has continued in full force and effect in the successor municipality.
Plaintiff was a policeman of the Borough of Vineland until May 23, 1950, when he was appointed chief of police. He has continued in that position ever since; admittedly, he enjoys civil service protection and is bound by the terms of the Civil Service Act and the rules and procedures of the Civil Service Commission of the State of New Jersey.
In June 1954 certain persons testified concerning plaintiff at public hearings held by the New Jersey Law Enforcement Council, with the result that defendant Maguire, Acting Director of Public Safety of the City of Vineland, suspended plaintiff without pay as of June 18, 1954. On that day plaintiff was served with the following notice:
*480
 "PRELIMINARY NOTICE
 DEPARTMENT OF PUBLIC SAFETY
 POLICE DEPARTMENT
 CITY OF VINELAND
 NOTICE OF PRELIMINARY SUSPENSION
 AFFECTING A PERMANENT OFFICER OR
 EMPLOYEE IN THE CLASSIFIED CIVIL
 SERVICE.
 Dated: June 18, 1954
 TO: S. GRILL D'IPPOLITO, Chief of Police
 Sixth Street & Chestnut Avenue
 Vineland, New Jersey
1. (a) TAKE NOTICE that on June 15th and 16th, 1954, certain statements were made by witnesses under oath before the Members of the New Jersey Law Enforcement Council conducting public hearings at the Cumberland County Court House, in Bridgeton, New Jersey, inquiring into alleged violations of gambling and law enforcement in the City of Vineland, which statements and sworn testimony accused you of certain criminal acts; consorting with known criminals; conduct unbecoming an officer; conduct subversive of good order and the discipline of the Police Force; failure to report known violations of law; accepting a bribe or favor as a consideration either for the performance or non-performance of your duty, and other acts of omission or commission as the Chief of Police of the City of Vineland, contrary to the laws of the State of New Jersey and the ordinances of the City of Vineland.
(b) In accordance with the provisions of Title 11, Revised Statutes of New Jersey, Civil Service, you are hereby SUSPENDED without pay as of June 18, 1954, pending an investigation and the preferring of formal charges against you and a hearing before the Acting Director of Public Safety or the Mayor of the City of Vineland.
2. Unless you satisfactorily explain or defend the above charges, final disciplinary action will be taken against you in form of confirmation or modification of the above disciplinary action, or suspension for a longer period, or removal.
3. You are hereby notified that you will be granted a hearing before us at a time and place to be subsequently set, in accordance with the Statutes of the State of New Jersey and the Rules of the Civil Service Commission in such case made and provided.
 S/ PETER T. MAGUIRE
 Peter T. Maguire
 Acting Director of Public Safety
 of the City of Vineland"
On or about July 2, 1954 plaintiff requested a prompt hearing on the "charges," as he termed them, set out in the preliminary notice of June 18. On July 21, 1954 he appeared before Acting Director Maguire and demanded reinstatement *481 to duty and a dismissal of the "charges," as provided for by N.J.S.A. 40:47-8. The request was refused. Plaintiff then filed a complaint in lieu of prerogative writ demanding judgment that defendants dismiss the "charges" and return him to duty as chief of police.
Thereafter, on July 30, 1954, there was filed in the Department of Public Safety of the City of Vineland a document entitled "In the Matter of the Charges against S. Grill D'Ippolito, Chief of Police of the Police Department of the City of Vineland, New Jersey  Specifications and Charges and Notice of Hearing," a copy of which was served on plaintiff the same day. It notified plaintiff that a hearing would be held before Acting Director Maguire on August 16, 1954 "to determine whether you should be fined, demoted, suspended or removed from the office or position which you now hold as Chief of Police," and that "the following charges are preferred against you"  detailing 16 separate charges. These may be summarized as: conduct unbecoming a policeman in that plaintiff, while a policeman, had demanded or accepted bribes in consideration of his not interfering with certain gambling or bookmaking activities he knew were going on; himself engaging in gambling, at which times and places he failed to take steps to prevent gambling and punish others for the crime so committed in his presence; suppressing evidence against certain defendants in criminal proceedings brought in the local municipal court; appropriating funds of others to his own use; using profane language while testifying under oath before the New Jersey Law Enforcement Council; consorting with known gamblers and criminals; and attempting to visit a known criminal in the county jail after midnight. These actions and conduct were described as violations of specifically designated provisions of the laws of the State of New Jersey, the rules and regulations of the State Department of Civil Service, and the ordinances and regulations of the City of Vineland. A copy of this notice is attached to defendants' answer, which denies that any "charges" were contained in the preliminary notice of June 18 but asserts they were set out in the July 30 notice.
*482 After the filing of the answer the court, on plaintiff's motion, stayed the hearing scheduled for August 16, 1954 before the Acting Director of Public Safety, pending final judgment. Plaintiff and defendants then filed cross-motions for summary judgment, resulting in the final judgment here on appeal. In granting defendants' motion and denying plaintiff's the Law Division judge held that "charges" were actually filed and served July 30, 1954, so that the date fixed for the hearing  August 16, 1954  was within the time prescribed by N.J.S.A. 40:47-8. Upon the filing of the notice of appeal the Law Division enjoined defendants from proceeding with the hearing newly scheduled for September 27, 1954.
Plaintiff's contentions, as stated or necessarily implied from the brief and oral argument are: (1) whether considered as punishment imposed after hearing, or as merely a procedural step, suspension cannot be effected under N.J.S.A. 40:47-6 and 8 unless charges have first been filed; regardless of circumstances, suspension during investigation is prohibited; (2) under N.J.S.A. 40:47-6 suspension does not denote punishment but is of procedural import only; (3) if suspension denotes punishment under N.J.S.A. 40:47-6, plaintiff has been punished because he has drawn no pay since June 18, 1954 and whatever be the outcome of this appeal or a hearing on the merits, he cannot recover pay from that time to the date of restoration to duty; and (4) N.J.S.A. 40:47-8 requires a hearing within 30 days after service of charges, and such charges were served on June 18, 1954, as shown by the language of the notice served that day, and further because defendant Maguire and plaintiff both understood the notice as constituting charges. On the other hand, defendants claim that (1) the word "suspended," under N.J.S.A. 40:47-6, denotes a type of punishment for adjudged violation of proscribed conduct; in this sense plaintiff has not been punished, and so there has been no violation of the section; (2) charges were first served on plaintiff on July 30, not on June 18, 1954; August 16, 1954 was fixed as the trial date, and therefore defendants did not *483 violate N.J.S.A. 40:47-6; and (3) in its procedural sense, suspension during investigation is permitted.
The word "suspended" has two distinct meanings in legislation dealing with tenure of office. Its first sense is, discipline administered to a civil servant after adjudication of his guilt of proscribed conduct. Its second meaning is the temporary, involuntary withdrawal of a civil servant from the duties of his office, position or employment, pending the hearing of charges against him. These denotations are by now commonplace. They are plainly stated in the Civil Service Rules:
"`Suspension' means either the temporary removal of an employee from his position with loss of pay as a disciplinary measure or his removal preliminary to hearing and discharge from the service." (Rule 64)
And compare Russo v. Walsh, 31 N.J. Super. 558 (Law Div. 1954); Vanderbach v. Hudson County Board of Taxation, 133 N.J.L. 499 (Sup. Ct. 1946), affirmed 135 N.J.L. 349 (E. & A. 1947); Mee v. Town of Montclair, 9 N.J. Misc. 46, 152 A. 705 (Sup. Ct. 1930).
The Legislature was undoubtedly familiar with these distinctive meanings of the word "suspended," and the concepts and purposes underlying them, when it enacted L. 1947, c. 292, now N.J.S.A. 40:47-6 and 8. Our problem is to determine the sense in which the Legislature used "suspended" in these two sections.
The present law had its origin in the Home Rule Act, L. 1917, c. 152, art. XVI, §§ 3 and 5, dealing with police. Section 3 guaranteed policemen tenure during good behavior, efficiency and residence in the municipality; it prohibited dismissal for political reasons, but permitted removal for incapacity, misconduct, non-residence, or disobedience of the rules and regulations of the police department. Section 5 gave policemen protection against removal by requiring written charges, public hearing and an opportunity for defense. The 1917 act spoke sparingly of procedural steps. *484 Section 5 was amended by L. 1928, c. 240, § 1, which made changes as to procedure, especially as related to the more effective use of subpoenas in connection with removal proceedings. In 1935 further changes were made in section 5 by c. 203, § 1: to the word "removed" was added, for the first time, the words "suspended," "fined" and "reduced." There was added, also for the first time, a provision that if a police officer or employee "shall be suspended pending trial on charges, such trial shall be commenced within thirty days otherwise said charges shall be dismissed and such officer or employee returned to duty." In the Revision of 1937, these provisions of the 1935 act became R.S. 40:47-6 and 8. It will be noted that the 1935 Legislature did not say explicitly from what event the 30 days were to run. That uncertainty was eliminated by L. 1947, c. 292, §§ 1 and 2, now N.J.S.A. 40:47-6 and 8. The pertinent text of the present statute is: N.J.S.A. 40:47-6:
"No person shall be removed from office or employment in any such police department * * * for political reasons, or for any other cause than incapacity, misconduct, nonresidence, or disobedience of rules and regulations established for the government of the police force and department * * *.
No person, whether officer or employee in any such police department * * * shall be suspended, removed, fined or reduced from office or employment therein, except for just cause, as hereinbefore provided, and then only after written charge or charges of the cause or causes of complaint shall have been preferred against such officer or employee of said police department * * * signed by the person or persons making such charge or charges and filed in the office of the body, officer or officers having charge of the department in which the complaint arises and a copy thereof served upon such person within fifteen days after the filing thereof and after the charge or charges shall have been publicly examined by the appropriate board or authority upon reasonable notice to the person charged, which examination shall be commenced not less than fifteen days nor more than thirty days after said copy of such charge or charges shall have been so served.
It is the intent of this section to give every person against whom a charge or charges for any cause may be preferred under this article a fair trial upon said charge or charges and every reasonable opportunity to make his defense if any he has or chooses to make and that in event of failure of compliance with any provision of this section, such charge or charges shall be dismissed."
*485 N.J.S.A. 40:47-8:
"If any officer, member or employee in any such department shall be suspended pending trial on charges, such trial shall be commenced within thirty days after service of a copy thereof upon him, otherwise the charges shall be dismissed and the officer or employee returned to duty."
The clearly expressed language of N.J.S.A. 40:47-6 makes readily apparent the will of the Legislature. A reading of that section demonstrates that suspension, when lawfully achieved, is the punishment which comes about after charges, notice, hearing, opportunity for defense, and a finding of guilt. Then and only then can suspension be pronounced. The time sequence of the steps prescribed proves that suspension was intended to be the punishment which might be imposed, as less drastic than removal, fine or reduction from office or employment, because deemed appropriate under the circumstances.
The same conclusion is reached through application of the familiar maxim of noscitur a sociis. This aid to interpretation has been sanctioned by our courts. In Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, 502, Justice Heher wrote:
"* * * The force of the term is on well-settled principles restrained by the accompanying words and the declared policy of the statute and the means employed for its execution. Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. The general word is qualified by the particular word. * * * The principle is expressed in the doctrine of noscitur a sociis and the variant rule of ejusdem generis. A word is known from its associates."
Applying the principle of noscitur a sociis, it is to be noted that in the second paragraph of N.J.S.A. 40:47-6 the word "suspended" is immediately adjacent to "removed, fined or reduced from office or employment." Beyond any argument, "removed," "fined," and "reduced" each describe a type of *486 punishment that may be imposed after conviction. It cannot be said that the Legislature intended to insert in this collocation of words, all clearly penal, another word  "suspended"  and then direct that it have a merely pre-judgment, procedural import, rather than a penal one.
Appellant originally asserted in his brief that if N.J.S.A. 40:47-6 makes suspension a form of punishment, then he already has been punished because he may never recover pay from June 18, 1954 to the date of his restoration to duty, citing Hillel v. Borough of Edgewater, 106 N.J.L. 481 (E. & A. 1930), in support. This contention was abandoned at the oral argument, and for obvious reasons. At the time of the Hillel decision, the statute in force was L. 1919, c. 149, which permitted recovery for wages only where there had been a dismissal from office or employment and the dismissal had been set aside as illegal by a court of competent jurisdiction. The police officers there involved had been suspended from office, and since they could not show compliance with either of the two conditions of the 1919 act, it had no vitality as to them. That act, with a slight change, became R.S. 40:46-34. In Strohmeyer v. Borough of Little Ferry, 136 N.J.L. 485 (E. & A. 1948), a policeman had been suspended pending a trial on charges, was found not guilty and restored to duty. His claim for wages for the period of his suspension was rejected. The court held that since R.S. 40:46-34 used the word "dismissed," and did not provide for cases of suspension, there could be no recovery. Within six months the Legislature altered the law, in effect superseding both the Hillel and Strohmeyer cases. L. 1948, cc. 163 and 395. These acts were made retroactive and Strohmeyer was now permitted to recover his salary. See Strohmeyer v. Borough of Little Ferry, 6 N.J. Super. 282 (Law Div. 1950).
Should plaintiff, after a hearing on the charges preferred against him, be found not guilty and restored to office, he could recover the salary withheld since June 18, 1954. He has not been "punished" by the withholding of salary.
In summary, under N.J.S.A. 40:47-6, "suspended" denotes a type of punishment after a hearing on charges and *487 a finding of guilty. No hearing has been held and no punishment imposed. Defendants have not violated the letter or the spirit of that section, so that insofar as plaintiff relied on its provisions, he had no cause of action and defendants were entitled to summary judgment as a matter of law.
The text of N.J.S.A. 40:47-8, set out above, is uncomplicated and plain in meaning. Plaintiff does not claim that the word "suspended" in this section is other than a procedural step prior to trial. The real dispute is whether there has been a violation of the section because, as plaintiff claims, "charges" were served on him on June 18, 1954 and no hearing was held within 30 days thereafter. As noted heretofore, this contention is based on the words used in the June 18 notice, and the alleged understanding of Acting Director Maguire and plaintiff as to their meaning. What the understanding of these two men was as to the nature of that notice is unknown because the record does not disclose their thoughts. In any event, it is of no consequence; the important consideration is the legal effect of the words used in the notice, reproduced earlier in this opinion.
The paper served on plaintiff on June 18, 1954 was entitled "Notice of Preliminary Suspension." Paragraph 1(a) informed him that witnesses had, under oath before the New Jersey Law Enforcement Council, imputed to him certain wrongful conduct, which is described in general language. Paragraph 1 (b) notified plaintiff that he was suspended without pay "pending an investigation and the preferring of formal charges" and a hearing before the acting director of public safety or the mayor. Plaintiff was thereby informed, in the clearest language, that there would be an investigation before any charges were brought, that formal charges might be preferred, and that a hearing on those charges might result. He further learned that the acting director of public safety or the mayor would take jurisdiction in case of a hearing, as permitted by N.J.S.A. 40:69A-43(d) (L. 1950, c. 210, § 3-13), rather than the city council, an alternative tribunal, under N.J.S.A. 40:69A-37(b) (L. 1950, c. 210, § 3-7).
*488 Paragraph 2 of the notice informed plaintiff that unless he explained or defended the "above charges," punishment in the form of suspension or removal might result. The words "above charges" obviously meant the "formal charges" that might be preferred against plaintiff, mentioned in paragraph 1(b). They do not refer, as plaintiff contends, to the content of paragraph 1(a) of the notice, for the words of that paragraph are not "charges." They are merely an explanation to plaintiff, and the public, of the circumstances which required the temporary withdrawal of plaintiff from the duties and powers of his office  an explanation which could have been withheld. It may be observed that the notice follows the official form CS-31A of the Civil Service Commission. The "Preliminary Notice" of June 18 was not a specification of charges.
Contrast with that notice the document served on plaintiff on July 30, 1954. It was entitled "Specifications and Charges and Notice of Hearing." After notifying plaintiff of the hearing to be held before Acting Director Maguire on August 16, it informed him that "the following charges are preferred against you," and then set out the charges themselves in clear and specific language under 16 numbered paragraphs. There can be no question that the notice of July 30, both in form and substance, constituted a preferring of charges as required by the statute. It follows that August 16, the date set for the hearing of these charges, was well within the 30-day period fixed by N.J.S.A. 40:47-8.
We deal, finally, with plaintiff's argument that suspension, in a procedural sense, during investigation, could not be visited upon him without charges first having been filed and served. We find no merit in this claim. In Vanderbach v. Hudson County Board of Taxation, 133 N.J.L. 499 (Sup. Ct. 1946), affirmed 135 N.J.L. 349 (E. & A. 1947), plaintiff was suspended on August 5, 1942 because of alleged misconduct as secretary of the Hudson County Board of Taxation. As here, no charges were then on file; they were drawn later and served on September 9, 1942. The hearing was fixed for September 26, 1942. Plaintiff there claimed, as does *489 the present plaintiff, that the resolution of suspension preliminary to the preferring of charges and trial thereon was void. Justice Case rejected the contention, stating:
"It is apparent that the suspension on August 5th was a temporary detachment, not by way of discipline or punishment, but as preliminary to and integrated with the statutory procedure for removal. That the board conceived the suspension to be such is evidenced by its proceeding to entertain charges leading to removal and fixing an early day for hearing. We have found that the board did have the right to remove prosecutor upon those charges after hearing and proofs as prescribed by statute, and inasmuch as the acts and omissions upon which the charges were founded had all occurred prior to the time of the suspension, we are of the opinion that the board, under the circumstances of the case, had the right to suspend prosecutor over the period reasonably required for the formulating of charges, the serving of them upon the accused, the bringing on of the hearing and the decision of the issue. The greater power includes the less. Inability of a public board to separate an inferior officer or an employee from his duties temporarily and in good faith pending trial could work serious impairment in the public service and is not, we think, to be taken as the legislative intent in all instances. The power of a board so to act where the public interest requires flows impliedly, almost necessarily, from the power specifically granted. We find that the public interest did fairly so require." (133 N.J.L. at page 509.)
"In the instant case the power to suspend is of the same inherent nature as is the expressly given power to remove. It works no different results. It is a minor power, necessary to give full effect to the greater. An examination of the charges carries the assumption, almost as a corollary, that a secretary who is guilty of the misconduct therein alleged ought not, in the public interest, to function during the period, necessarily of some duration, while the statutory preliminaries to a determination of the fact are in progress. The suspension was not by way of punishment and in its intendment and effect was not indefinite. It was in its purpose and out-working a detachment from duty pending trial and decision and it finally merged in the judgment to which it was a preliminary incident." (133 N.J.L. at page 512)
See Mee v. Town of Montclair, 9 N.J. Misc. 46, 152 A. 705 (Sup. Ct. 1930), and cf. Russo v. Walsh, 31 N.J. Super. 558 (Law Div. 1954).
The public welfare would be ill served if we were to accept plaintiff's thesis. We might well imagine an instance where a policeman was observed in the act of robbery, or committing some other felony or act which scandalizes the community. *490 Until the municipal officials had an opportunity to investigate fully and to draft and serve appropriate charges, would this law enforcement officer have the statutory right to retain his uniform, badge, weapon, authority, title and access to records, and by any or all of these have the opportunity to hinder an inquiry into his conduct? Under plaintiff's view the answer would be in the affirmative, for the policeman could not be suspended until formal charges were put on file and served. No sound view of the statute justifies his assertion that the requirement of written charges is a condition precedent to suspension pending trial.
The argument is made that if a police officer may be suspended pending trial, without charges first having been preferred and served, it would be possible for municipal officials to circumvent the statute. Such suspension, effected under color of affording an opportunity for investigation and the drawing and service of charges, could well become a means of punishing a police officer without trial. In short, the possibility that a municipality may act in bad faith proves its lack of power to suspend the officer pending the preparation, filing and service of charges and the holding of a hearing. The answer to this is that all power is subject to abuse, but this does not negate power. Further, plaintiff has not charged an actual abuse of power, much less attempted to prove it. Finally, as long as courts sit, plaintiff has adequate safeguards to protect himself from municipal action that is arbitrary or conceived in bad faith.
We hold, therefore, that the word "suspended," as used in N.J.S.A. 40:47-8, means a step in procedure prior to hearing; that it can be effected during investigation without charges being already on file; that the charges against plaintiff were filed and served on July 30, 1954; that the date fixed for trial was within the time prescribed by the act, and that defendants have not violated the letter or spirit of that section.
The judgment under review is affirmed and the order staying further proceedings vacated.