123 N.J. Super. 434 (1973)
303 A.2d 585
STATE OF NEW JERSEY
v.
GEORGE SOTTERIOU, JOSEPH SHAMY, JOHN SOTTERIOU, JOHN SANDONATO, MICHAEL MILLER, ROBERT MITTMAN AND JOANNE SANDONATO. IN RE COMMITTMENT OF MICHAEL MILLER.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1973.
Decided April 11, 1973.
*436 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Mr. William E. Flynn argued the cause for the appellant, Michael Miller (Messrs. Antonio & Flynn, attorneys).
*437 Mr. John J. Pribish, Assistant County Prosecutor of Middlesex County argued the cause for the respondent, State of New Jersey (Mr. John S. Kuhlthau, Middlesex County Prosecutor, attorney).
The opinion of the court was delivered by CRAHAY, J.A.D.
Michael Miller appeals, on leave granted, from an order confining him to the Middlesex County Jail for the duration of the trial or trials to be based on the open counts of Indictment No. 405-71, and providing further for Miller's release on bail of $25,000 pending the beginning of those trials. The multi-count indictment charges Miller, Joseph Shamy and others with conspiracy to obstruct justice, obstruction of justice and aiding and abetting the obstruction of justice. Shamy, in counts not charging Miller, was accused of an additional conspiracy to commit bribery and bribery. Miller, who has filed a bail bond of $20,000 following an arraignment on the counts in the indictment involving him, seeks in the alternative a reduction of the $25,000 additional bail fixed in the order appealed from. By order of January 29, 1973 we granted leave to appeal and ordered Miller's release from jail pending our disposition of this interlocutory appeal.
The record reveals the following. A fire occurred during the night of September 28, 1971 at the Zoo Tavern in Carteret, New Jersey. As a direct result two men were killed, including the owner of the tavern. During the police investigation early the next morning a strong odor of gasoline was detected inside the building and it was noted that a juke box had been placed in a manner to seemingly restrict access through the front door. Based on their investigation the officers concluded that the fire was of an incendiary nature. Sometime during the night of September 28, 1971, subsequent to the fire, one George Sotteriou, a named defendant in the indictment, was admitted to Middlesex General Hospital suffering from severe burns over the lower half of his body. The State alleges that he was implicated in *438 the arson and escaped apprehension by fleeing the scene. Subsequent to his hospital admission Sotteriou was visited by Joseph Shamy, a business associate. During the visit appellant Michael Miller came to the hospital where, it is alleged, Joseph Shamy told him where Sotteriou's car was located. Miller then proceeded to the location as told to him, the home of one John Sandonato, another named defendant, and removed the car to the parking lot of the Barbary Coast Restaurant in Woodbridge. Miller returned to the lot with another man during the early morning hours of September 29, at which time he was apprehended by the police, who arrested him and held him as a material witness.
Prior to presenting the matter to the grand jury the prosecutor proposed to grant Miller immunity in return for his assistance. However, the prosecutor was not satisfied with appellant's cooperation. He was thereafter called before the grand jury. After being clearly advised of his right to remain silent, he chose to testify with specificity as to his participation and that of others in the involved offenses. He did so without seeking or being granted immunity. A motion to dismiss the counts in the indictment pertaining to Miller based on prior promises of immunity was dismissed. The dismissal was subject to renewal prior to trial of any count against Miller. Thereupon Miller was released on $20,000 bail. He has not yet been brought to trial on the three counts against him.
Miller was subpoenaed to testify at the trial of Joseph Shamy on counts 11 and 12, which charged conspiracy to commit bribery and bribery (two counts in which Miller was not named). The remaining counts were severed and pend trial. On January 18, 1973 Miller appeared at the trial on counts 11 and 12 and took the stand outside the presence of the jury. As soon as he was asked a question he invoked his Fifth Amendment privilege against self-incrimination, whereupon the State submitted a petition to compel testimony under N.J.S.A. 2A:81-17.3, the immunity statute.
*439 The trial judge then signed an order compelling appellant to testify in all matters relating to Joseph Shamy and others in the multi-count indictment. After reviewing the petition counsel for appellant insisted that Miller be given transactional rather than use immunity, which was denied. Because of that denial, Miller refused to testify. See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), reh. den. 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); In re Zicarelli, 55 N.J. 249 (1970), aff'd 406 U.S. 472 (1972); "The Fifth Amendment's Proxy-Transactional or Use Immunity?," 3 Seton Hall L. Rev. 199 (1971). After being ordered to answer Miller again refused. He was held in contempt and committed to the Middlesex County Jail until he purged himself of his contumacious conduct by testifying.
At the conclusion of the State's case on January 25, 1973 a judgment of acquittal was entered in favor of Shamy. The next day counsel for appellant applied to the trial judge for the release of Miller, asserting that the testimony by which he might purge himself was now moot and, further, that the immunity statute did not provide for further incarceration. The court denied the request to release the appellant, since there were remaining counts in the indictment to be tried, ruling that the only means by which Miller could purge himself was to testify in the pending matters. The court further ordered that pending the beginning of the trial of the open counts, Miller might be released on bail of $25,000. As noted, Miller contends that he should be released outright or that in the alternative he is entitled to a reduction of bail.
The New Jersey Witness Immunity Act, N.J.S.A. 2A: 81-17.3, was patterned after the Model State Witness Immunity Act. In re Addonizio, 53 N.J. 107 (1968). The New Jersey act provides:
In any criminal proceeding before a court or grand jury, if a person refuses to answer a question or produce evidence of any other *440 kind on the ground that he may be incriminated thereby and if the Attorney General or the county prosecutor with the approval of the Attorney General, in writing, requests the court to order that person to answer the question or produce the evidence, the court shall so order and that person shall comply with the order. After complying and if but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, such testimony or evidence may not be used against the person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order. However, he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order. If a person refuses to testify after being granted immunity from prosecution and after being ordered to testify as aforesaid, he may be adjudged in contempt and committed to the county jail until such time as he purges himself of contempt by testifying as ordered without regard to the expiration of the grand jury; provided, however, that if the grand jury before which he was ordered to testify has been dissolved, he may then purge himself by testifying before the court. [Emphasis added]
Miller contends that the italicized portion of the statute provides a remedy for compelling testimony only where a party refuses to testify before a grand jury, and argues that the procedure is not available to a trial court. He urges, therefore, that his retention in custody for the purpose of compelling him to testify in pending trials is outside the statutory grant.
In order to accept Miller's position, we would have to find that the immunity statute is the sole authority under which a court can commit a recalcitrant witness. Additionally, we would then have to rule that the legislative intent of N.J.S.A. 2A:81-17.3 did not contemplate the type of action taken by the trial court here. It is not necessary to discuss the authority existing without the statute for commitment by a court, since we hold that the immunity statute encompasses the remedy employed here.
N.J.S.A. 2A:81-17.3 differs somewhat in wording from its federal counterpart contained in the Organized Crime Control Act, 28 U.S.C.A., § 1826 (1970), which provides:

*441 Recalcitrant Witnesses
(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of 
(1.) the court proceeding, or
(2.) the term of the grand jury, including extensions,
before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months * * *. [Emphasis added]
But the intent and purpose of the two acts are the same. Clearly, the legislative intent of N.J.S.A. 2A:81-17.3 is that a witness
* * * may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order * * * [Emphasis added]
The mandate crystallized in the quoted language is, that despite immunity, a witness may be "prosecuted or subjected to penalty * * * for any * * * contempt committed in answering or failing to answer." Since the opening words of the immunity statute read, "In any proceeding before a court or grand jury * * *." (emphasis added), it is frivolous to argue that the failure of the Legislature to repeat the word "court" in the latter part of the statute, restricts the remedy enunciated to proceedings before a grand jury. To read the statute as appellant suggests would be to hold that the Legislature intended the grand jury to have a power superior to that of a court and generate a result not grounded in law or logic.
Appellant's semantic argument fails. As Chief Justice Weintraub has said:
*442 It would be helpful if legislative draftsmen abided by our semantics, but we cannot insist that they shall. [In re Ziccarelli, supra, at 271]
The employment of the term "penalty" in N.J.S.A. 2A:81-17.3 does not limit a court in its remedy to incarceration for a stated term. Interpreting a similar statute (N.J.S.A. 52:9M-17) in In re Ziccarelli, supra, the Supreme Court rejected an analogous argument in construing a section of that statute which provides in part;
* * * may nevertheless be prosecuted for any perjury committed in such answer or in producing such evidence, or for contempt for failing to give an answer or produce evidence in accordance with the order of the commission * * *.
In Ziccarelli the court examined the purpose of the legislation, which was to enable the State Commission of Investigation to obtain facts, and decided that mere punishment for a prescribed period would not serve that purpose, saying:
We can think of no reason why the Legislature would want to permit a witness to block the inquiry if he is willing to accept a penalty. Mindful, as we are, that the expression `prosecution for contempt' has been used widely to describe a proceeding arising out of contumacy, whether the object of the proceeding is to compel compliance or to punish for noncompliance or both, we must seek the legislative design in that light, notwithstanding that the terms employed are not the ones we prefer. Here we have no doubt that the Legislature intended the S.C.I. to obtain the facts, whatever the wish of the person subpoenaed. The very provision for a grant of immunity repels the notion that a witness may choose to be silent for a price. [at 272]
So it is in the instant case. Nothing in the statute even suggests that a witness who has been granted immunity and ordered to testify, but refuses, may continue to refuse if he is willing to accept the penalty of incarceration for a fixed term for criminal contempt of court. Cf. State v. Craig, 107 N.J. Super. 196 (App. Div. 1969), cert. den. 55 N.J. 169 (1969).
*443 We are satisfied that the legislative intent in enacting the immunity statute was to broaden the power of courts and grand juries to ascertain relevant facts by providing an additional remedy more effective than the preexisting power to punish a recalcitrant witness for criminal contempt.
Appellant Miller also contends that his commitment was arbitrary and merely punitive since the trial of Joseph Shamy at which he was called to testify has ended. His argument ignores, however, that there are still pending and awaiting trial several counts of the indictment against Shamy and others. The order compelling Miller to testify included "all matters" pertaining to Shamy and others enumerated in the indictment, and which he testified to before the grand jury. The several charges against Shamy and others in the indictment all stem from one set of events in close proximity.
We hold that the trial court was empowered under N.J.S.A. 2A:81-17.3 to commit appellant Miller to the county jail pending the trial of the indictment against Joseph Shamy and others. To rule otherwise would sanction an unseemly charade and defeat the ends of justice.
As we have indicated, the trial court was empowered to, and pursuant to the immunity statute might well have insisted, that Miller remain in jail pending the trial of the open indictments against Shamy and others without fixing bail. Appellant has no cause to complain because the court, to avoid any punitive aspect[1] stemming from the lack of *444 a fixed trial date for the remaining open counts, decided to permit appellant to be released on bail of $25,000 pending the opening of the trial on those counts. The fixing of bail is not mandated by the immunity statute. In view of the uncertainty of trial dates on the pending counts of the indictment, the trial court did not abuse its discretion in setting bail. Nor was there an abuse of discretion in the amount of the bail. The purpose of the bail on this commitment is separate and distinct from that of the bail posted on Miller's arraignment on the criminal charges against him.
Nothing in this opinion should be construed as limiting prosecution of appellant for criminal contempt for his refusing to testify.
Our order of January 29, 1973 directing that appellant Miller be released from the county jail is vacated. The order appealed from is affirmed.
NOTES
[1] In a recent case, the Federal District Court for the District of New Jersey held that incarceration to compel testimony for 14 months had reached the punitive stage where the grand jury, by which the defendants could purge themselves, was to be disbanded the following month. In re Patricia and Donald Grumbles, Criminal No. 722-71 (D.N.J., filed February 26, 1973). The order was affirmed by the Court of Appeals, No. 73-1174 (3 Cir., March 1, 1973). Previously the Court of Appeals had turned down appeals of refusals to free the defendants. 453 F.2d 119 (3 Cir.1971), cert. den. 406 U.S. 932, 92 S.Ct. 1806, 32 L.Ed.2d 134 (1972), and No. 72-1013 (3 Cir., filed January 25, 1972).