175 N.J. Super. 254 (1980)
418 A.2d 272
IN THE MATTER OF THE GENERAL DISCIPLINARY HEARING OF LIEUTENANT JOHN J. TOTH.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1980.
Decided July 9, 1980.
*256 Before Judges SEIDMAN, MICHELS and DEVINE[1].
Justin P. Walder argued the cause for appellant Lieutenant John J. Toth (Walder, Steiner & Sondak, attorneys; Justin P. Walder of counsel and Barry A. Kozyra on the brief).
Michael R. Cole, Assistant Attorney General, argued the cause for respondent Colonel Clinton L. Pagano, Superintendent, Division of State Police, Department of Law and Public Safety, State of New Jersey (John J. Degnan, Attorney General, attorney; Michael R. Cole of counsel and on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Appellant Lieutenant John J. Toth appeals from a final decision of Colonel Clinton L. Pagano, Superintendent, Division of State Police, Department of Law and Public Safety, State of New Jersey, finding him guilty of (1) obtaining or making an unauthorized copy of "the Lordi Report" and (2) disseminating a copy of that confidential investigation report to an unauthorized member of the Division of State Police in violation of the rules *257 and regulations governing the State Police, and imposing a penalty of a one-step reduction in rank to Sergeant First Class and a six-month suspension without pay.
Briefly, this matter arises out of the publication in the New York Daily News of portions of a State Police confidential character and background investigation (commonly referred to as a "4-Way Investigation") on Joseph P. Lordi, chairman of the Casino Control Commission (hereafter referred to as the Lordi Report). The dissemination of that investigatory report was violative of Executive Order No. 48 (1968 N.J. Laws at 1718-1719), directing no disclosures of such documents, and Nero v. Hyland, 76 N.J. 213 (1978), upholding their confidentiality. An investigation followed, revealing that an unauthorized copy of the Lordi Report had been circulated outside of the State Police to then State Senator Raymond Bateman (at that time a gubernatorial candidate) and then to the news media. Lieutenant John S. Rosko claimed that he received a copy of the Lordi Report from Toth and admitted that he had given a copy of the report to Bateman. The report eventually made its way to the news media through the Bateman organization without Senator Bateman's knowledge. Thereafter, Toth and Rosko were suspended from duty without salary or allowances pending the filing and resolution of formal disciplinary charges against them. Toth moved before this court for leave to appeal his suspension, seeking reinstatement and back pay and, alternatively, a resumption of salary and allowances during the period of suspension. We denied Toth's motion.
On August 3, 1978, formal charges were lodged against Toth and subsequently a disciplinary hearing was held before hearing officer Lieutenant Colonel George Quinn.[2] Toth's request for an appointment of an independent hearing examiner was denied. *258 Rosko was called as a witness against Toth, but during the course of his direct examination Rosko invoked his Fifth Amendment privilege against self-incrimination. The disciplinary hearing against Toth was adjourned to enable the State to make application to the Law Division to determine the validity of Rosko's assertion of the privilege. Following a hearing in the Law Division, the trial court ruled that Rosko had properly asserted his privilege. The trial court, however, in response to the State's application, ordered a special proceeding at which Rosko was to testify subject to immunity conferred by N.J.S.A. 2A:81-17.2a2. However, while the trial court ordered this special proceeding, it declined to rule upon "the legality of such a proceeding" or "the subsequent admissibility before the hearing officer of a transcript of such testimony." The special proceeding was held and Rosko testified under a grant of immunity. Toth was not a party to the proceeding at which Rosko was granted immunity or to the special court-ordered proceeding at which Rosko testified and Toth did not cross-examine Rosko at that proceeding. The transcript of Rosko's testimony was then admitted in evidence by the hearing officer at Toth's disciplinary hearing over the latter's objection.
*259 By this appeal Toth seeks (1) a reversal of the final decision of Pagano finding him guilty of the disciplinary charges, (2) dismissal of the charges or, alternatively, a remand for a new hearing before an Administrative Law Judge.

I
Toth contends that the State Police rules and regulations relating to the preparation and handling of the Lordi Report violated our so-called Right to Know Law. N.J.S.A. 47:1A-1 et seq., L. 1963, c. 73. We disagree. "A public record" is defined by the Right to Know Law as a record "required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State...." N.J.S.A. 47:1A-2. The Lordi Report was not a record required to be made and maintained by virtue of N.J.S.A. 5:12-52(d), which governs appointments to the Casino Control Commission and provides:
Appointments to the commission shall be made by the Governor with the advice and consent of the Senate. Prior to nomination, the Governor shall cause an inquiry to be conducted by the Attorney General into the nominee's background, with particular regard to the nominee's financial stability, integrity, and responsibility and his reputation for good character, honesty and integrity.
This statute does not require a written record or report of the inquiry to be made or maintained. Accordingly, we hold that the Lordi Report is not a public record within the purview of the Right to Know Law, and there is no public right to access to said report.

II
We find no merit in Toth's claim that the State Police rules, regulations and procedures for the preparation and handling of reports, such as the Lordi Report, are unclear and vague. R. 2:11-3(e)(1)(E).

III
We are also satisfied that there is no merit in Toth's claim that his suspension without notice of the charges violated *260 his right to due process. Toth claimed that the State Police rules and regulations which authorize the Superintendent to suspend a member without pay and allowances pending an investigation (Art. II, § 2) and the filing of charges against him (Art. II, § 3(b)) and, inferentially, the resolution of said charges, are unconstitutional. We disagree.
It has long been recognized in this State that an administrator has the authority to suspend a subordinate pending investigation of possible charges against him. D'Ippolito v. Maguire, 33 N.J. Super. 477 (App.Div. 1955); Vanderbach v. Hudson Cty. Bd. of Taxation, 133 N.J.L. 499 (Sup.Ct. 1946), aff'd 135 N.J.L. 349 (E. & A. 1947); see, also, Mee v. Montclair, 9 N.J. Misc. 46 (Sup. 1930). In D'Ippolito, plaintiff, a police chief in Vineland, New Jersey, was suspended by the municipality on the basis of testimony presented at public hearings before the New Jersey Law Enforcement Council relating to alleged unlawful conduct by him while a member of the police force. Plaintiff contended that he could not be suspended without charges having first been filed against him. The court disagreed, stating:
The public welfare would be ill served if we were to accept plaintiff's thesis. We might well imagine an instance where a policeman was observed in the act of robbery, or committing some other felony or act which scandalizes the community. Until the municipal officials had an opportunity to investigate fully and to draft and serve appropriate charges, would this law enforcement officer have the statutory right to retain his uniform, badge, weapon, authority, title and access to records, and by any or all of these have the opportunity to hinder an inquiry into his conduct? Under plaintiff's view the answer would be in the affirmative, for the policeman could not be suspended until formal charges were put on file and served. No sound view of the statute justifies his assertion that the requirement of written charges is a condition precedent to suspension pending trial. [33 N.J. Super. at 489-490]
Similarly, in Vanderbach the court upheld a suspension in the absence of formal charges having been preferred against the official. The court stressed that it was in the public interest for the official not to function during the period of investigation, stating:
The suspension was not by way of punishment and in its intendment and effect was not indefinite. It was in its purpose and outworking a detachment from duty pending trial and decision and it finally merged in the judgment to which it was a preliminary incident. [133 N.J.L. at 512]
*261 More recent New Jersey cases have also sanctioned the State's power to suspend, at least upon the filing of charges:
The power of suspension is by no means uncommon. The implied power in the State and its subdivisions to suspend its employees or officers pending disposition of indictments or other charges where the public interest so requires has long been recognized. [Mount v. Public Empl. Retirem. Sys. Trustees, 133 N.J. Super. 72, 85-86 (App.Div. 1975)]
See, also, Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 489 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); Russo v. Walsh, 18 N.J. 205 (1955). In Russo, the court aptly stated the rationale of suspension:
... we are also fully conscious of the potential jeopardy to the public interest by the continuance in office of an employee who may have already betrayed his trust and against whom charges of misconduct are pending as a result of a bona fide investigation. It needs little reflection to adumbrate the serious impairment which might befall the public good if the chief executive is powerless to protect the State against further defalcations. [18 N.J. at 212]
See, also, Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

IV
However, we are satisfied that the hearing officer erred in admitting in evidence and considering the transcribed testimony of Rosko taken by the State at the court-ordered special proceeding. N.J.S.A. 2A:81-17.2a2, in pertinent part, provides:
If any public employee, having claimed the privilege against self-incrimination, testifies before any court, grand jury or the State Commission of Investigation, after having been informed that his failure to appear and testify would subject him to removal from his office, position or employment, such testimony and the evidence derived therefrom shall not be used against such public employee in a subsequent criminal proceeding ... [Emphasis supplied]
It is clear from a reading of the statute that the immunity claim thereunder applies only to an ongoing proceeding before a court, grand jury or the State Commission of Investigation. It does not apply to an administrative hearing, such as the State Police disciplinary proceeding here under review, and certainly cannot be made applicable thereto by resort to a "specially convened court proceeding." The intent of the immunity statute was simply to broaden the power of the courts, the grand jury and the State Commission of Investigation to ascertain relevant facts by providing an additional remedy more effective *262 than the pre-existing power to punish a recalcitrant witness for criminal contempt. State v. Sotteriou, 123 N.J. Super. 434, 443 (App.Div. 1973).
Consequently, we hold that the trial court erred by relying upon N.J.S.A. 2A:81-17.2a2 to compel Rosko's testimony. The trial court should not have permitted the Superintendent to utilize this statute in such a way and should not have participated in such a proceeding. Furthermore, since Toth was not a party to the special court-ordered proceeding involving Rosko, Toth had no right to participate in the proceeding or to confront Rosko by cross-examination. Rosko's transcribed testimony was patently hearsay, and under the circumstances should not have been admitted in evidence at Toth's disciplinary hearing.
While we recognize that it is common practice for administrative agencies to receive hearsay evidence at their hearings (Weston v. State, 60 N.J. 36, 50-51 (1972); N.J.S.A. 52:14B-10(a)), nevertheless, the rule in this State is that a factfinding or legal determination cannot be based on hearsay alone. Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony. However, "for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it." Weston v. State, supra; Gilligan v. International Paper Co., 24 N.J. 230, 236 (1957); In re Application of Howard Savings Bk., 143 N.J. Super. 1, 8-9 (App.Div. 1976). We are satisfied from our study of this record that the finding of guilt on the charge that Toth disseminated a copy of the confidential Lordi Report to an unauthorized member of the State Police was based primarily, if not entirely, on Rosko's hearsay testimony. There was not "a residuum of legal and competent evidence in the record" to support such a finding. Accordingly, the finding of guilt on this charge must be reversed and a new hearing held. Additionally, since we cannot determine how the hearing officer utilized this hearsay testimony in reaching his decision on the charge against Toth of obtaining or making an unauthorized copy of the Lordi *263 Report, including its effect upon the hearing officer's appraisal of Toth's over-all credibility, we are convinced that in the interests of justice the finding of guilt on this charge must also be reversed for a new hearing.
Accordingly, the final decision of the Superintendent is reversed and the matter is remanded to the Division of State Police for a new hearing. We direct that all proceedings therein be conducted by the Office of Administrative Law (see N.J.S.A. 52:14F-1 et seq.) and at the conclusion of the proofs we direct that the Administrative Law judge make adequate findings of fact and conclusions of law as required by the applicable provisions of the Administrative Proceedings Act (N.J.S.A. 52:14B-10(c)). In view of our decision to reverse and remand the matter for a new hearing conducted by the Office of Administrative Law, we need not consider the remaining issues raised by Toth. We do not retain jurisdiction.
NOTES
[1] The untimely death of Judge Devine occurred while this appeal was under consideration by this part of the court. Counsel consented to a determination of the appeal by the remaining members of the part.
[2] On August 3, 1978, formal charges were also lodged against Lieutenant John S. Rosko, which, in substance, charged him with wrongfully obtaining and distributing a copy of the Lordi Report. Rosko instituted an action in the United States District Court for the District of New Jersey pursuant to the provisions of 42 U.S.C.A. § 1983, seeking, among other relief, to enjoin his disciplinary hearing on the charges lodged against him and to declare the State police regulations governing the administrative disciplinary process unconstitutional as applied to his conduct. The District Court found that a key element of Rosko's defense to the disciplinary charges would be his good faith belief that he was acting in the public interest in attempting to bring to the attention of the Judiciary Committee all of the facts bearing on the propriety of the Lordi appointment. The District Court further noted that Superintendent Pagano admittedly was quoted in the Newark Star Ledger as saying that Rosko's reason for giving Senator Bateman the Lordi Report was to "help him [Rosko] get a political leg up. He hoped to get an edge where no one has a right to." The District Court concluded that, in the circumstances, the risk of unfairness because of Superintendent Pagano's "admitted predisposition" required that "[a]n impartial arbiter from outside the Division must sit as Hearing Officer ... because of the reality of command influence in a paramilitary organization like the Division." The District Court thereupon directed Superintendent Pagano to request the Director of the Office of Administrative Law to assign a judge to preside over the Rosko hearing, and ordered that Superintendent Pagano be replaced in the decision-making roll in the disciplinary process by the Attorney General of New Jersey. Rosko v. Pagano, 466 F. Supp. 1364, 1370 (D.N.J. 1979).