**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3216-18T4

IN THE MATTER OF THE
APPEAL OF THE DENIAL
OF M.P., JR.'S HANDGUN
PURCHASE PERMIT.

_____

Submitted April 20, 2020 – Decided June 16, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GM-2018-50.

Zohn & Zohn, LLP, attorneys for appellant M.P., Jr. (Edward Jay Zohn, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

M.P., Jr. appeals from the trial court's order denying his application for two handgun purchase permits.[1]  M.P. had appealed the denial of those permits by Captain Keith Sanzari, the officer-in-charge of the Oakland Police Department (Department),[2] who concluded "the details of [M.P.'s] arrest by the Union City Police Department, serve[d] as a disqualifier under" N.J.S.A. 2C:58-3(c)(5).  The trial court heard testimony from M.P. and a Department lieutenant who was appointed by the captain to conduct the background investigation of M.P.  The court, in an oral opinion, denied the application under N.J.S.A. 2C:58-3(c)(5), which provides:

> No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth.  No handgun purchase permit . . . shall be issued:  (5) To any person where the issuance would not be in the interest of the public health, safety or welfare.

---

[1]  Not knowing the disposition of some of the charges against M.P. considered by the trial court, we use his initials out of an abundance of caution.  See R. 1:38-3(c)(7); R. 1:38-3(d)(5), (6), (7) and (8).

[2]  The Department did not have a chief.

On appeal, M.P. argues the State failed to show that M.P. was disqualified by the statutory disability, and the court's decision was based solely on hearsay. We disagree and affirm.

"We review a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). Our review of a trial court's factual findings on such matters, however, is "limited." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015). "Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence." In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997). We also defer to the trial court's credibility findings. State v. Kuropchak, 221 N.J. 368, 382 (2015) (noting "[a]ppellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record" (quoting State v. Locurto, 157 N.J. 463, 474 (1999))).

Our Supreme Court recognized that a Law Division de novo hearing for a denied applicant "contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court," and the review "compensates constitutionally for procedural

A-3216-18T4

deficiencies before the [police authority]." Weston v. State, 60 N.J. 36, 45-46 (1972). The trial court followed that guidance in finding four discrete incidents involving M.P. justified denial of his application.

During the first incident in 2004, M.P., then fourteen years-old, was charged with harassment and trespass at Indian Hills Trail Club where he told at least one younger child to insert her thumb in her "butt" and that he had "a big dick."[3] Those charges were dismissed as part of a diversion through the Juvenile Conference Committee.

Complaints alleging harassment were also signed against M.P. in 2009 by the father of a girl M.P. dated and the father's female housemate. M.P. testified he also filed a complaint against the father because "[h]e was . . . stalking [him and because the father d]rove past [his] house [and] came banging on [his] door." The trial court inferred from M.P.'s testimony that the complaint he filed "was a tactic in order to defend himself against the harassment complaint against him, but be that as it may, we now have an incident of alleged harassing behavior in

---

[3] The trial court found M.P. was fourteen and made the remarks to an eight-year-old girl. M.P. testified he believed he was fourteen. In his merits brief, he claims he was fifteen. The same report lists the victims' ages as seven; another lists them as seven and eight. The discrepancies have no bearing on our review.

2009 for which there required police involvement at the time." The charges against M.P. were dismissed.

The trial court also considered a 2010 incident. M.P. was accused of harassment by his former girlfriend who, in an affidavit considered by the trial court, averred M.P. and a girl—the daughter of the man involved in the 2009 cross-complaints—were

> harassing [her] at home, public, and school. They [drove] past [her] home, yelling and giving [her] and [her] family inappropriate gestures. [M.P.] has made several comments and gestures with regards to [her] body in public. He [was] also threatening [her] and saying he [was] going to get even. [M.P. had] also been spreading inappropriate rumors such as [she had] STIs, [was a] prostitute, a deformed midget. When he [saw her] on the road driving . . . he [made] gestures, along with [the girl].

The affiant obtained a temporary restraining order against M.P. which was subsequently dismissed.

The trial court recognized the affidavit was hearsay because the complainant did not testify before it, but it did

> have the testimony of . . . [M.P.] And one of the most troubling things about . . . [M.P.'s] testimony is the fact that he admits to the [c]ourt that he actually stated to [his ex-girlfriend] -- and this is -- why is this so concerning to me? First of all, this is less than [ten] years ago, okay? He's an adult. He's stating to [his ex-girlfriend], he says to this [c]ourt, that if he becomes a

police officer, he's going to get even and give her a ticket.

The final incident involved M.P.'s 2016 arrest in Union City for the disorderly persons offense of unlawful possession of oleoresin capsicum, N.J.S.A. 2C:39-6(i); fourth-degree possession of a prohibited device, a stun gun, N.J.S.A. 2C:39-3(h); and fourth-degree unlawful possession of a weapon—the stun gun—under circumstances not manifestly appropriate for a lawful use, N.J.S.A. 2C:39-5(d). Those charges were ultimately dismissed, but the trial court focused on M.P.'s actions during the police investigation.

The State alleged by way of hearsay evidence—testimony from the lieutenant and a police report—that police responded to a telephone call from M.P.'s employer reporting he possessed a stun gun. Police took the device—that also doubled as and appeared to be a flashlight—from M.P. M.P. denied that the flashlight served any other purpose when asked by an officer. As a police sergeant inspected it, he asked M.P. if the device was something that was going to hurt him; M.P. insisted it was a flashlight. The sergeant inadvertently activated the stun gun and was shocked by the device. The trial court was "hard-pressed to find . . . [M.P.'s] testimony credible" that he told the sergeant not to touch the buttons on the flashlight.

A-3216-18T4

The trial court recognized the hearsay nature of the evidence but found "most importantly and chiefly, the testimony of . . . [M.P.] . . . corroborates that this incident occurred." The trial court keenly focused not on the crimes charged—which, in his merits brief, M.P. asserts were ultimately dismissed—but on "[M.P.'s] own admission, [that] he did not disclose to the police [sergeant] -- after he was asked, . . . that the flashlight was a stun gun." The trial court found M.P. "failed to exercise sound judgment in the handling of that stun gun, and it resulted in a police [sergeant] getting shocked[.]"

From these incidents, the trial court determined it was "not dealing with a situation . . . where [there was] an unbroken period of many, many years in which . . . [M.P.] . . . demonstrated some increased maturity, sound judgment[.]" The trial court concluded "it would not be in the interest of the public health, safety, and welfare" to approve the applications because M.P.'s "course of conduct . . . spread out over a number of years" because he "demonstrated poor judgment, demonstrate[d] a lack of candor before this [c]ourt, [and] demonstrate[d] a lack of safe handling of a weapon in at least one of the incidents."

As was the trial court's, our review is de novo. We concur with the trial court's conclusion, reached on substantial, credible evidence in the record, and

7

which entailed credibility findings based on the court's assessment of the witnesses' testimony.

As noted by the trial court, although the charges against M.P. did not result in any convictions, "[t]he dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm[.]" See In re Osworth, 365 N.J. Super. 72, 78 (App. Div. 2003).

N.J.S.A. 2C:58-3(c)(5) is a provision "intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." Burton v. Sills, 53 N.J. 86, 91 (1968), appeal dismissed, 394 U.S. 812 (1969). The four incidents found by the trial court demonstrate that legislative disability. Indeed, M.P.'s cavalier attitude in failing to warn the police sergeant of the potential harm the stun gun posed and misleading the sergeant as to that danger, is, alone, a sufficient reason to deny the application. See State v. Cunningham, 186 N.J. Super. 502, 507 (App. Div. 1982) (observing that intentional wrongdoing or negligence in the handling of a weapon could support denial of a permit). The incidents were not simply, as M.P. contends in his merits brief, "benign contact with the criminal

justice system[.]"  They reveal that M.P. is a person to whom the issuance of a handgun purchase permit would not be in the "interest of the public health, safety or welfare," N.J.S.A.  2C:58-3(c)(5), because of his continued poor judgment in various personal interactions, expressed intention to improperly exercise authority in retaliating against personal slights and, as stated, his disregard for the dangers posed by and lack of respect for the power of weapons. We agree with the trial court that M.P.'s immaturity and poor judgment warranted denial of his applications.

We are also satisfied that the trial court's findings were not solely based on hearsay evidence.  The trial court may consider hearsay evidence, provided its findings are not entirely based upon hearsay evidence.  Weston, 60 N.J. at 51.  Those findings must be supported by a residuum of legally competent evidence.  Ibid.; see also In re Toth, 175 N.J. Super. 254, 262 (App. Div. 1980).

M.P. admitted during his testimony the four police-involved incidents.  He admitted:  he did not disclose to police that the flashlight was a stun gun; threatening to issue a summons to an ex-girlfriend if he became a police officer; and his involvement in the Indian Hills Trail Club incident.  Although he did not admit to all of the State's proofs,  "[t]he residuum rule does not require that each fact be based on a residuum of legally competent evidence but rather focuses on

9

the ultimate finding or findings of material fact." <u>Ruroede v. Borough of Hasbrouck Heights</u>, 214 N.J. 338, 359 (2013). The trial court found a residuum of competent evidence, based primarily on M.P.'s testimony, to conclude that the multiple incidents compelled the denial of the permit application on the basis of public health, safety, or welfare, N.J.S.A. 2C:58-3(c)(5). We fully agree with that assessment.

To the extent not addressed, we determine M.P.'s remaining arguments to be without sufficient merit to warrant discussion here. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3216-18T4